## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **TABATHA JALAYNE MALLORY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil No.  12-4024-JAR** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF** ) | |
| **SOCIAL SECURITY,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

### MEMORANDUM ORDER AND OPINION

This matter is before the Court seeking review of the final decision of the Defendant

Commissioner of Social Security denying Plaintiff Tabatha Mallory's application for

supplemental security income ("SSI") benefits under Title XVI of the Social Security Act.[1]

Upon *de novo* review, the Court reverses and remands the decision of the Commissioner.

### I.      Procedural History

In 2009 Plaintiff applied for SSI benefits with a protective filing date of December 15,

2007.  Plaintiff's application was denied initially and upon reconsideration.  Plaintiff timely

requested a hearing before an administrative law judge ("ALJ").  After a hearing, the ALJ issued

a decision finding that Plaintiff was not disabled; the Appeals Council denied Plaintiff's request

for review of the ALJ's decision.  Plaintiff then timely sought  judicial review before this Court.

### II.     Standard for Judicial Review

Judicial review under 42 U.S.C. § 1383(c)(3) is limited to whether defendant's decision

is supported by substantial evidence in the record as a whole and whether defendant applied the

---

[1]42 U.S.C. §§ 1381 *et seq.*

correct legal standards.[2]  The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3]  In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of defendant.[4]

## III.   Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . "[5] An individual

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . .[6]

The Secretary has established a five-step sequential evaluation process to determine whether a claimant is disabled.[7]  If the ALJ determines the claimant is disabled or not disabled at any step along the way, the evaluation ends.[8]

---

[2]*See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)).

[3]*Id.* (quoting *Castellano*, 26 F.3d at 1028).

[4]*Id.*

[5]42 U.S.C. § 423(d)(1)(A); § 416(i); § 1382c(a)(3)(A).

[6]*Id.* § 423(d)(2)(A); § 1382c(a)(3)(B).

[7]20 C.F.R. § 416.920(a); *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1983).

[8]*Id.*

## IV.     Discussion

Plaintiff does not challenge the ALJ's determination at step one that Plaintiff has not engaged in substantial gainful activity since May 1, 2009, the application date.  Nor does Plaintiff challenge the ALJ's determination at step two that Plaintiff has medically "severe" impairments of: asthma, anxiety, bipolar disorder, borderline personality, generalized myalgia and obesity.  Plaintiff implicitly challenges the ALJ's determination at step three that Plaintiff's impairments or combination of impairments do not meet or medically equal the listings 12.04 (Affective Disorders), 12.06 (Anxiety Related Disorcers), and 12.08 (Personality Disorders).[9] And Plaintiff expressly challenges the ALJ's determination, at step four, that Plaintiff's mental residual functional capacity ("RFC") allows her to "perform simple, routine, repetitive tasks with no interaction with the public and occasional interaction with coworkers and supervisors." Plaintiff contends that the ALJ's determinations were the product of three errors: (1) improperly weighing the opinions of treating and non-treating physicians; (2) improperly assessing Plaintiff's credibility; and (3) failing to order a consultative examination.

The ALJ found that the evidence failed to establish the presence of "paragraph C" criteria, as there is "no history of an inability to function outside of a highly supportive living arrangement or outside the area of the claimant's home."  The ALJ also found that Plaintiff's mental impairments failed to satisfy the "paragraph B" criteria, in that she did not have marked restrictions in at least two functional areas.  The ALJ further found that Plaintiff had only mild restriction in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence and pace.  The ALJ also found that while Plaintiff had

---

[9]20 C.F.R. Pt. 404, subpt. P., app. 1, Listing of Impairments.

experienced "one to two episodes of decompensation, each of extended duration," she did not

meet the "paragraph B" requirement of repeated episodes of decompensation of extended

duration, meaning three episodes within one year, or an average of once every four weeks, each

lasting for two weeks.

The Court agrees with Plaintiff, that the ALJ's findings are based on incomplete or

erroneous information, and inconsistent rationale.  First,  contrary to the ALJ's finding with

respect to the "paragraph C" criteria, there was evidence of a history of an inability to function

outside of a highly supportive living environment.   In July 2009, Plaintiff's records at the

"Residence" inpatient center at Valeo Behavioral Health ("Valeo") noted that to avoid

hospitalization, Plaintiff "needs 24 hour support in a safe and secure environment."  Plaintiff was

admitted to the "Residence" for inpatient psychiatric care after a suicide attempt in June 2009,

and after a several day stay in Stormont Vail Hospital.

And, with respect to the ALJ's findings on the "paragraph B" criteria, the Court finds

additional errors.  The ALJ found that Plaintiff had mild restrictions in activities of daily living

and moderate difficulties in social functioning, concentration, persistence and pace, relying upon

the opinions of the State agency psychologists who reviewed Plaintiff's medical records, but

never examined Plaintiff.  The State agency psychologists,  Lauren Cohen, Ph.D. and Witt S.

Douglas, Ph.D, opined that Plaintiff has average intelligence, problems with dysregulation of

mood and behavior, and should have infrequent contact with the public, but has no limits

understanding and remembering and can follow simple and intermediate instructions as well as

adapt to changes in her work routine.

The ALJ explained that she gave "great weight" to the opinions of Drs. Cohen and

Douglas, because she found that their opinions were consistent with the record as a whole.  Yet, the ALJ gave "little weight" to the treatment records from Valeo, even though that is virtually the only medical evidence of Plaintiff's mental impairments in the record.  Other than Plaintiff's outpatient and inpatient treatment records at Valeo, the only other medical evidence in the record pertaining to Plaintiff's mental impairments is a notation by Dr. Henderson in May 2008 that Plaintiff had reported having an anxiety attack, and the inpatient records of Stormont Vail from Plaintiff's hospitalization in June 2009 after a suicide attempt.  It was certainly a contradiction for the ALJ to find that the treatment records should be given little weight, but then justify the opinions of agency psychologists because their opinions were consistent with that same record.

A treating source opinion may be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and is not inconsistent with other substantial evidence in the record, but if it is "deficient in either respect, it is not entitled to controlling weight."[10]  Here, there is no treating source opinion that addresses all of the factors the ALJ must consider under the paragraph B and C criteria.

Yet, there are opinions and findings in the record that should be considered, such as an opinion found in the July 2009 inpatient treatment records at the Residence at Valeo, where she was treated after she was hospitalized following a suicide attempt.  The fact that Plaintiff's condition was at times severe is documented in the opinion, which states that at that time, Plaintiff needed to be in a fully supportive environment 24 hours a day to avoid further hospitalization. The ALJ did not consider this evidence, as she erroneously found that "claimant has not been hospitalized . . . due to her mental condition."  Moreover, with respect to

---

[10]*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2) and citing SSR 96- 2p, 1996 WL 374188, at *5 (July 2, 1996)).

concentration, persistence and pace, Valeo's records documented that Plaintiff "presented with immature behavior and difficulty staying on subject." It was error to give no weight to the findings and notations in the treatment records. For "[e]ven if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference.'"[11] Here, the ALJ gave no weight, much less deference to the treatment records.

The ALJ justified giving little weight to the treatment records because Plaintiff was treated at Valeo from August 2008 to September 2009, and the relative time period began in May 2009, when Plaintiff filed her application for SSI. To be sure, the length of the treatment relationship is an appropriate consideration. In fact, in *Goatcher v. U.S. Department of Health & Human Services*,[12] the Tenth Circuit directed the ALJ consider the following factors in determining what weight to give any medical opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[13] But, it was error to give little weight and no deference to the only treating opinions and records, even though the course of treatment was eleven months.

---

[11]*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

[12]52 F.3d 288, 290 (10th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)-(6)).

[13]*Id.*

The ALJ also explained that Plaintiff missed appointments and that justifies giving little weight to the treatment records, for Plaintiff did not receive a complete course of treatment. To be sure, Plaintiff missed appointments, particularly in November of 2008, yet she was examined and treated numerous times over the course of the eleven month period. And, to be sure, at times Plaintiff was not compliant with her medications; and at times her condition improved when she was compliant. Yet the treatment records also demonstrate that over the course of a year Plaintiff's condition did not stabilize. As the ALJ found, Plaintiff's Global Assessment of Functioning score ("GAF") ranged from 58 (indicative of moderate difficulties) to 25 (indicative of hallucinations and delusions). GAF scores have no direct correlation to the severity requirements of the mental disorder listing.[14] And, GAF scores are not dispositive, but are a subjective clinical determination of the individuals' overall level of functioning.[15] Nevertheless, GAF scores should be considered.

And here, the GAF scores as well as other progress reports do not clearly demonstrate that Plaintiff consistently improved with medication, or that Plaintiff was improving over time. According to the progress notes, Plaintiff was doing "fairly well" in August 2008 during the time she was employed at the daycare center. By the end of October 2008 she was unemployed and having extreme anxiety. She had been taking Seroquel, but in late October 2008, her doctor prescribed Clonazepam, in addition to the Seroquel. Plaintiff missed all her appointments in November, but she was seen in December 2008 and January 2009, at which time she reported improvement from taking the Clonazepam. But, in December, January and March, she

---

[14] 65 Fed. Reg. 50746-01, 50764-65, 2000 WL 360176, 2000 WL 1173632 (August 21, 2000).

[15] *See Chester v. Apfel*, 182 F.3d 931 (Table), 1999 WL 360176, at *3 n.1 (10th Cir. 1999).

continued to have anxiety attacks, temper outbursts and irritability.  In May 2009, Plaintiff reported continued problems with rages, mood regulation, relationship difficulties, racing thoughts and attention deficit, despite taking the Seroquel and Clonazepam.

At Plaintiff's June 1, 2009 visit, she reported being under a lot of stress, having worsening mood swings and irritability, poor sleep and anxiety.  She asked for a mood stablilizer and agreed to again try Geodon despite having side effects in the past.  Things did not improve in June, as Plaintiff attempted suicide by overdose later that month, and was hospitalized at Stormont Vail Hospital for five days, and then admitted for inpatient psychiatrice treatment at the Residence at Valeo until early July, 2009.  In August and September 2009 Plaintiff continued being treated as a outpatient at Valeo.  In these visits she reported worsening symptoms, increased anxiety and panic attacks, thoughts of self-harm, depression and anxiety.  In Plaintiff's last recorded visit at Valeo in September 2009, the psychologist observed significant improvement in her overall symptoms, which Plaintiff attributed to her living situation improving upon her mother moving out.  She reported that she continued to have racing thoughts.  At best, Plaintiff's condition was volatile, and not continually improving during her year of treatment at Valeo.  Thus, the ALJ erred in relying upon the opinions of the State agency psychologists as consistent with the record, while at the same time giving little weight to the treatment record.

Similarly, the ALJ discredited the other type of evidence in the record, the testimony and statements of Plaintiff.  This too is inconsistent with her justification for reliance upon the State agency psychologists' opinions as consistent with the record.  Nonetheless, as the Tenth Circuit has explained, "[c]redibility determinations are peculiarly the province of the finder of fact, and

8

we will not upset such determinations when supported by substantial evidence."[16]  Thus, the Court gives some deference to the ALJ's credibility determination.

The ALJ discredited Plaintiff's testimony and statements for a number of reasons.  First, she noted that Plaintiff continues to smoke despite having asthma, and that Plaintiff has not always been compliant with her medication.  Yet, Plaintiff's financial difficulties were at least one reason for this noncompliance.  The ALJ also discredited Plaintiff because she missed a number of appointments at Valeo; yet the records at Valeo note that Plaintiff struggled with remembering and keeping appointments, indicating that missing appointments is not necessarily volitional, and may be attributable to her mental impairments.

The ALJ also discredited Plaintiff's testimony about the severity of her social functioning, finding that Plaintiff co-habitates with her boyfriend and takes care of the needs of the household.  Yet the record also demonstrates that Plaintiff has difficulty co-habitating with him; she has been arrested twice for domestic assault.  Moreover, during a time period when Plaintiff also lived with her mother and sister, she continually reported heightened anxiety and stress due to this living arrangement.  Indeed, Plaintiff is currently on probation for threatening her sister.

The ALJ also discredited Plaintiff's testimony because Plaintiff had worked for some time in a day care center.  Yet Plaintiff quit this job to avoid being terminated for arguing with her supervisor, evidence indicative of problems with social functioning.

Under these circumstances, when the ALJ essentially gave little or no weight to the record evidence, which included the treatment records and Plaintiff's statements and testimony,

---

[16]*Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

it was error to give great weight to the opinions of the state agency psychologists because those opinions were purportedly consistent with the record.  This is a situation in which a consultative examination should have been ordered.  In a situation where the claimant does not provide sufficient evidence about her impairment and the ALJ is unable to obtain adequate evidence from the claimant's treating source(s) or other medical source(s), it is proper for the ALJ to request a consultative examination.[17]  In this case, the Court finds that there is evidence in the record that established a reasonable possibility of the existence of a disability, and the Court finds that the result of a consultative examination could reasonably be expected to be of material assistance in determining whether Plaintiff is disabled.[18]

## V.      Conclusion

For the above stated reasons, this matter must be reversed and remanded for further proceedings, wherein the ALJ must (1) obtain a consultative examination; and (2) consider and weigh that opinion of the examining practitioner in accordance with the law; and (3) consider and determine Plaintiff's credibility in accordance with the law.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendant's decision denying Plaintiff disability benefits is **REVERSED and REMANDED** to the agency for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: September 20, 2012                    S/ Julie A. Robinson
                                             **JULIE A. ROBINSON**
                                             **UNITED STATES DISTRICT JUDGE**

---

[17] 20 C.F.R 416.919a.

[18] *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. Okla. 1997).